**BAILEY v. SLENTZ et al.**

No. 4129.

United States Court of Appeals
Tenth Circuit.

May 11, 1951.

Ernest U. Sandoval, Walsenburg, Colo., for appellant.

John F. Eberhardt, Wichita, Kan. (George B. Powers, Wichita, Kan., and John A. Etling, Kinsley, Kan., were with him on the brief), for appellees.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action by Morris Bailey to recover damages for personal injury sustained as the result of a collision between an automobile driven by him and a truck driven by Paul Cannon within the scope of his employment by the remaining two defendants. At the close of plaintiff's evidence, defendants moved for a directed verdict, among others on the ground that Bailey's evidence affirmatively established contributory negligence as a matter of law. This motion was denied. At the conclusion of all the evidence, the motion was renewed. The court reserved its ruling thereon and submitted the case to the jury. The jury returned a verdict for plaintiff. Following the verdict on January 23, 1950, the defendants filed a motion for judgment, notwithstanding the verdict and in the alternative for a new trial. The court heard this motion on February 24, 1950, took it under advisement, and on February 28, 1950 entered judgment, setting aside the verdict, and entered judgment for defendants. The court further held that it was not satisfied with the verdict of the jury. It was, therefore, further ordered that in event, but only in event the judgment entered in favor of the defendant was reversed or set aside on appeal, that defendants' motion for a new trial be sustained. It is from this judgment that this appeal is prosecuted.

At the time of the argument, counsel for Bailey contended that the court erred in granting the motion for a new trial in the alternative. It is now, however, settled by the decision of the Supreme Court that it was the court's duty under Rule 50(b) of the Rules of Civil Procedure, 28 U.S.C.A., to pass upon both motions. See Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147.

The sole remaining question is whether the evidence established as a matter of law that Bailey was guilty of contributory negligence warranting the court in entering judgment for defendants, notwithstanding the verdict. The collision occurred at an intersection of Highway 50 South running East and West, with a secondary highway running North and South. Highway 50 South is 80 feet wide. The travel portion thereof is 22 feet wide. A stop sign is located approximately 30 feet South of the South line of Highway 50 South, where it is intersected by the secondary highway.[1] Bailey was traveling West on Highway 50 South and Cannon was approaching

[1] Kansas law requires the stop sign and made it the duty of Cannon to stop before entering Highway 50 South.

Highway 50 South from the South on the secondary highway in a truck. Bailey had an unobstructed view of the intersection from 400 feet away; likewise Cannon, as he approached the intersection, had an unobstructed view 400 feet East along Highway 50 South. The weather was clear and visibility was unobstructed. Bailey testified that he was traveling about 50 miles per hour; that when he was about 400 feet from the intersection he saw Cannon's truck approach from the South about 75 to 100 feet South of the Highway and that Cannon appeared to be slowing down; that he estimated the truck to be traveling from 15 to 20 miles per hour and that it appeared to be "slowing down to me so I decided he was going to stop. I knew he was supposed to and it dawned on me then that he was not going to stop after the front end of his truck entered the highway, so I put on the air. I tried to stop before he got there." He testified that after he first observed the truck, it slowed down to 5 or 7 miles per hour; that it was then about 50 feet South of the highway and continued at this slow speed until it got within 10 feet of the highway. Asked on cross-examination within what distance he could stop his car, he replied that "he did not want to say." Being further pressed, he replied: "I would say maybe 100 feet." He testified that for a minute after he saw the truck apparently increase its speed, he still thought he was going to stop and that he could not say exactly the exact second when it dawned on him that he was not going to stop. The pavement showed skid marks of Bailey's car for from 40 to 50 feet back from the point of impact.

Cannon, the driver of the truck, testified that he was driving his truck at all times in what was known as "low, low speed" and that the maximum obtainable speed in this gear was 5 miles per hour and that he was traveling not more than 4 miles per hour at any time. He further testified that he stopped at the stop sign, looked to the East, but saw no car approaching and that he then started across the intersection without again looking.

Appellee contends that Bailey's statement that he was about 200 feet away when he concluded Cannon was not going to stop and his further testimony that he could have stopped within 100 feet convicts him of contributory negligence as a matter of law. But Bailey also testified that as he came on over the raise about 400 feet from the intersection, he saw Cannon's truck approaching the highway about 75 to 100 feet South of the intersection; that "he appeared to be slowing down to me so I decided he was going to stop. I knew he was supposed to and it dawned on me that he was not going to stop, after the front end of his truck entered the highway, so I put on the air. I tried to stop before I got there." He testified at that time he was about 100 to 125 feet away.

■■ In testing the sufficiency of the evidence on a motion for a directed verdict for defendants, the evidence most favorable to the plaintiff will be taken as true and the unfavorable testimony will be disregarded.[2] Bailey had a right to assume that Cannon would observe the law and stop at the stop sign and he was not guilty of negligence in acting upon that assumption and in failing to reduce his speed until it became apparent to him that Cannon would not stop.[3]

■ In determining whether Bailey was guilty of contributory negligence, we must also judge his conduct in light of the sudden emergency which confronted him. He had at most a second or two to act, after he concluded that Cannon was not going to stop. Kansas in line with other courts has held that under such circumstances one is not chargeable with negligence if he fails to act in the most judicious manner.[4]

2. Revell v. Bennett, 162 Kan. 345, 176 P. 2d 538; Sponable v. Thomas, 139 Kan. 710, 33 P.2d 721; Hill v. Southern Kansas Stage Lines Co., 143 Kan. 44, 53 P.2d 923; Keir v. Trager, 134 Kan. 505, 7 P.2d 49, 81 A.L.R. 181.

3. Jones v. McCullough, 148 Kan. 561, 83 P.2d 669; Keir v. Trager, 134 Kan. 505, 7 P.2d 49; Revell v. Bennett, 162 Kan. 345, 176 P.2d 538.

4. Hill v. Southern Kans. Stage Lines Co., 143 Kan. 44, 53 P.2d 923.

The maximum time required to traverse the distance of 400 feet was approximately 5.4 seconds. During this brief time, Bailey was traveling at a speed of 50 miles per hour, as he had a lawful right to do. All the time he was observing the approach of Cannon's truck. He could not with any degree of accuracy, in a space of a second or two, tell where he was with reference to the intersection, when he concluded that Cannon was not going to stop, or just where Cannon was with reference to the intersection, when it dawned on him that Cannon was not going to stop. Taking the evidence then in the light most favorable to Bailey, it establishes that he concluded that Cannon was not going to stop when he was about to enter Highway 50 South and that at that time he applied his brakes and tried, but was unable to stop. If he did this, he acted as a reasonably prudent person should under the emergency which confronted him and was not guilty of contributory negligence. Whether he so acted was for the jury to say from a consideration of all the evidence and was not for the court to determine as a matter of law.

The court did not act upon the motion for a new trial until 31 days after it was filed. The new trial was not granted for any of the grounds set out in defendants' motion, but on the sole ground that the court was "not satisfied with the verdict of the jury. * * *" In Marshall's U. S. Auto Supply, Inc. v. Cashman, 10 Cir., 111 F.2d 140, we held that the trial court's discretion to grant a new trial on the ground that it was dissatisfied with the verdict must be exercised within ten days of the return of the verdict and that thereafter the court was without power to grant a new trial on that ground. To the same effect also see Freid v. McGrath, 76 U.S. App.D.C. 388, 133 F.2d 350.

The judgment of the trial court is accordingly reversed and the cause is remanded with directions to reinstate the verdict and enter judgment thereon. It is so ordered.